## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on November 16, 2009**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | |
| | : | **Grand Jury Original** |
| **v.** | : | |
| | : | **VIOLATIONS:** |
| | : | |
| **MANSOUR MOGHTADERI ZADEH,** | : | **18 U.S.C. § 371** |
| also known as | : | **(Conspiracy)** |
| **MANSOUR ZADEH,** | : | |
| also known as | : | **50 U.S.C. § 1705** |
| **MITA ZAREK,** | : | **(International Emergency Economic** |
| also known as | : |  **Powers Act)** |
| **MITA ZADEH,** | : | |
| | : | **31 C.F.R. Part 560** |
| **BARSAN AERO CHEMICALS LTD.,** | : | **(Iranian Transactions Regulations)** |
| | : | |
| **LAVANTIA LTD.,** | : | **15 C.F.R. Parts 746 and 764** |
| | : | **(Export Administration Regulations)** |
| **JAYHOUN FARAZ KALA CO. LTD.,** | : | |
| | : | **18 U.S.C. § 554** |
| **and** | : | **(Smuggling Goods)** |
| | : | |
| **ARAXIS TRADE MANAGEMENT LTD.:** | : | **18 U.S.C. § 2** |
| | : | **(Aiding and Abetting and** |
| **Defendants.** | : |  **Causing an Act to Be Done)** |
| | : | |
| | : | **18 U.S.C. § 1001** |
| | : | **(Material False Statements)** |
| | : | |
| | : | **18 U.S.C. § 981(a)(1)(c)** |
| | : | **28 U.S.C. § 2461(c)** |
| | : | **(Criminal Forfeiture)** |

# I N D I C T M E N T

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Defendants

1.      Defendant MANSOUR MOGHTADERI ZADEH, also known as MANSOUR ZADEH, also known as MITA ZAREK, also known as MITA ZADEH ("MANSOUR MOGHTADERI ZADEH"), is a citizen and resident of Iran who procured goods from the United States and other countries on behalf of customers located in Iran, including military end-users in Iran. Beginning as early as in or about September 2005, and continuing through in or about September 2007, defendant MANSOUR MOGHTADERI ZADEH, using companies that he owned, did conspire with employees of an aircraft parts supplier in the Netherlands to export U.S.-origin goods to Iran.  Beginning as early as in or about May 2007, and continuing through in or about December 2008, defendant MANSOUR MOGHTADERI ZADEH used companies that he owned and/or operated to continue to export U.S.-origin goods to Iran and also to violate a Temporary Denial Order issued by the United States Department of Commerce.

2.      Defendant BARSAN AERO CHEMICALS, LTD. ("BARSAN") is an Iranian company that is owned and operated by defendant MANSOUR MOGHTADERI ZADEH and others. Defendant BARSAN is located in Tehran, Iran.

3.      Defendant LAVANTIA LTD. ("LAVANTIA") is a Cypriot company that is owned and operated by defendant MANSOUR MOGHTADERI ZADEH.  Defendant LAVANTIA is located in Nicosia, Cyprus.

4.      Defendant JAYHOUN FARAZ KALA COMPANY LTD. ("JAYHOUN FARAZ KALA") is an Iranian company that is owned and operated by defendant MANSOUR

2

MOGHTADERI ZADEH.  Defendant JAYHOUN FARAZ KALA  is located in Tehran, Iran.

5.     Defendant ARAXIS TRADE MANAGEMENT LTD. ("ARAXIS TRADE MANAGEMENT") is a Cypriot company that is owned by a family member of defendant MANSOUR MOGHTADERI ZADEH, and is operated by defendant MANSOUR MOGHTADERI ZADEH and others.  Defendant ARAXIS TRADE MANAGEMENT is located in Nicosia, Cyprus. Defendant ARAXIS TRADE MANAGEMENT was created in or about March 2008 following the issuance of the Temporary Denial Order against, among others, defendant LAVANTIA.

 The International Emergency Economic Powers Act and the Iranian Transactions Regulations

6.     The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, authorized the President of the United States ("the President") to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy or economy of the United States when the President declared a national emergency with respect to that threat.

7.     Beginning with Executive Order No. 12170, issued on November 14, 1979, the President has found that "the situation in Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States and declare[d] a national emergency to deal with that threat."

8.     On May 6, 1995, the President issued Executive Order No. 12959, adopting and continuing Executive Order No. 12170 and prohibiting, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person.  Executive Order No. 12959, as consolidated with other prior Executive Orders in, and supplemented by, Executive Order No. 13059 (August 19,

1997), and as extended by Presidential Notice of March 10, 2004 (69 Fed. R. 12051), was in effect at all times relevant to this Indictment.

9.      The Executive Orders authorized the United States Secretary of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders.  Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions Regulations ("ITR"), 31 C.F.R. Part 560, implementing the sanctions imposed by the Executive Orders.

10.     The ITR prohibit, among other things, the export, reexport, sale, or supply, directly or indirectly, of any goods, technology, or services from the United States or by a United States person, wherever located, to Iran or the Government of Iran, without prior license from the United States Department of the Treasury, through the Office of Foreign Assets Control, located in the District of Columbia.  The ITR further prohibit any transactions that evade or avoid, or have the purpose of evading or avoiding, any of the prohibitions contained in the ITR, including the unauthorized exportation of goods from the United States to a third country if the goods are intended or destined for Iran.  The ITR was in effect at all times relevant to this Indictment.

<u>The Export Administration Regulations and Temporary Denial Orders</u>

11.     The United States Department of Commerce, located in the District of Columbia, is responsible for reviewing and controlling the export of certain goods and technologies from the United States to foreign countries.  The Export Administration Act ("EAA"), 50 U.S.C. App. § 2101-2420, authorized the Department of Commerce to prohibit or curtail the export of any goods and technology, as necessary, to protect, among other things, the national security and foreign policy of the United States.  The Department of Commerce implemented that authority through the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774.  Although the EAA has lapsed, the

4

EAR continues to be in effect under the provisions of IEEPA, by virtue of Executive Order No. 13222 (August 17, 2001), as extended by successive Presidential notices.

12.     Pursuant to 15 C.F.R. §§ 764.6(c) and 766.24 of the EAR, the United States Department of Commerce may issue an order temporarily denying export privileges to an individual or entity when such an order is necessary in the public interest to prevent the occurrence of an imminent violation.   The EAR prohibits any person from engaging in conduct contrary to a temporary denial order.   The EAR further prohibits any person from causing, aiding, abetting, or soliciting conduct contrary to a temporary denial order as well.

<u>Export and Shipping Records</u>

13.     Pursuant to United States law and regulation, exporters and shippers or freight forwarders are required to file certain forms and declarations concerning exports of goods and technology from the United States.   Typically, those filings are completed through the submission of a paper Shipper's Export Declaration ("SED") or the submission of Electronic Export Information ("EEI") via the Automated Export System ("AES").   AES is administered by the United States Department of Homeland Security ("DHS"), Bureau of Customs and Border Protection, which is headquartered in the District of Columbia.   The SEDs and EEIs are official documents submitted to the DHS in connection with exports from the United States.   The SEDs and EEIs are stored by the United States Department of Commerce, Bureau of the Census, which is headquartered in the District of Columbia.

14.     An essential and material part of the SED or EEI is information concerning the ultimate consignee and the country of ultimate destination of the export.   In many cases, the identity of the ultimate consignee determines whether the goods may be exported a) without any specific

authorization from the United States government; b) with the specific authorization or a license from the United States Department of Commerce, the United States Department of State, or the United States Department of the Treasury; or c) whether the goods may not be exported from the United States.

15.     The SED or EEI is equivalent to a statement to the United States government that the transaction occurred as described.  The SED or EEI is used by the United States Bureau of Census to collect trade statistics and by the Bureau of Industry and Security, United States Department of Commerce, which is located in the District of Columbia, for export control purposes.

## COUNT ONE
### (Conspiracy to Unlawfully Export U.S.-Origin Goods to Iran and to Defraud the United States)

### A. THE CONSPIRACY

16.     The allegations in Paragraphs 1 through 15 are incorporated and re-alleged by reference in this Count.

17.     Beginning as early as in or about September 2005, the exact date being unknown to the Grand Jury, and continuing through in or about September 2007, defendant MANSOUR MOGHTADERI ZADEH did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to (a) commit an offense against the United States, that is, to export and cause the exportation of goods from the United States to Iran in violation of the prohibitions imposed upon that country by the United States, without having first obtained the required licenses from the Office of Foreign Assets Control, United States Department of the Treasury, located in the District of Columbia, in violation of Title 50, United States Code, Section 1705, and Title 31, Code of Federal Regulations, Parts 560.203 and 560.204; and (b) defraud the

United States government by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations prohibiting the export or supply of goods from the United States to Iran without a license, by deceit, craft, trickery, and dishonest means, in violation of Title 18, United States Code, Section 371.

18.    Known members of the conspiracy included the following entity and individuals: an aircraft parts supplier in the Netherlands ("Entity A"); a Dutch national ("Individual B") who owned and operated Entity A; and a second Dutch national ("Individual C") who worked for Entity A.

19.    The conduct alleged in this Count occurred within the District of Columbia and elsewhere, and is therefore within the venue of the United States District Court for the District of Columbia pursuant to Title 18, United States Code, Section 3237(a).

## B.  OBJECTS OF THE CONSPIRACY

20.    The objects of the conspiracy were:

A.    to acquire U.S.-origin goods, primarily aircraft parts and other supplies for use in the aviation industry, from the United States to supply to entities in Iran;

B.    to conceal from United States companies and the United States government that the U.S.-origin goods were destined for Iranian end-users;

C.    to make a financial profit for defendant MANSOUR MOGHTADERI ZADEH and other conspirators; and

D.    to evade the regulations, prohibitions, and licensing requirements of the ITR.

## C.  MANNER AND MEANS OF THE CONSPIRACY

21.    The manner and means by which defendant MANSOUR MOGHTADERI ZADEH and other conspirators sought to accomplish the objects of the conspiracy included, among others,

the following:

   A.  Defendant MANSOUR MOGHTADERI ZADEH and other conspirators began planning and acting outside of the United States to acquire goods from inside the United States.

   B.  Defendant MANSOUR MOGHTADERI ZADEH and other conspirators used e-mail accounts and other forms of communication to communicate with one another and with other individuals located in the United States and Iran.

   C.  Defendant MANSOUR MOGHTADERI ZADEH and other conspirators used companies, including defendants BARSAN and JAYHOUN FARAZ KALA, to solicit purchase orders for U.S.-origin goods from customers in Iran.

   D.  Defendant MANSOUR MOGHTADERI ZADEH and other conspirators used companies outside of Iran, including defendant LAVANTIA, to send requests for purchases of U.S.-origin goods to companies located in the United States on behalf of other conspirators and customers in Iran.

   E.  Defendant MANSOUR MOGHTADERI ZADEH and other conspirators used companies outside of Iran, including defendant LAVANTIA, to place orders and purchase U.S.-origin goods from companies located in the United States.

   F.  Defendant MANSOUR MOGHTADERI ZADEH and other conspirators wired money from accounts from outside of the United States to accounts of United States' companies in the United States in payment for the purchased U.S.-origin goods.

   G.  Defendant MANSOUR MOGHTADERI ZADEH and other conspirators intentionally concealed from companies, shippers, and freight forwarders located in the United States

the ultimate end-use and end-users of the purchased U.S.-origin goods.

H.     Defendant MANSOUR MOGHTADERI ZADEH and other conspirators intentionally caused companies in the United States to submit false information on SEDs to the United States government.

I.     Defendant MANSOUR MOGHTADERI ZADEH and other conspirators caused shipments of U.S.-origin goods to be made from the United States to the Netherlands before causing the U.S.-origin goods to be shipped to Iran.

J.     Defendant MANSOUR MOGHTADERI ZADEH and other conspirators caused the U.S.-origin goods to be exported from the United States to individuals and entities in Iran without obtaining a license from the Office of Foreign Assets Controls, United States Department of the Treasury, located in the District of Columbia.

### D. **OVERT ACTS**

22.     In furtherance of this conspiracy, and to accomplish its purposes and objects, at least one of the conspirators committed or caused to be committed, in the District of Columbia and elsewhere, at least one of the following overt acts, among others:

#### **EXPORT OF FIBER OPTIC VIDEO TRANSMITTER AND RECEIVER**

(1)     In or about October 2005, Electronic Equipment Company ("EEC"), located in Tehran, Iran, requested that defendant MANSOUR MOGHTADERI ZADEH, through defendant BARSAN, procure a fiber optic video transmitter and receiver, identified by the U.S. manufacturer part number.

(2)     On or about October 18, 2005, Individual C, located in the Netherlands, requested a quote for a fiber optic video transmitter and receiver, identified by the U.S. manufacturer

part number, from a representative of a company located in New York state ("New York Company").

(3)     On or about February 8, 2006, Entity A, located in the Netherlands, placed an order for a fiber optic video transmitter and receiver, identified by the U.S. manufacturer part number, with the New York Company for approximately $1,700.00.

(4)     On or about February 8, 2006, Entity A, located in the Netherlands, sent a sales order to EEC, located in Tehran, Iran, for a fiber optic video transmitter and receiver, identified by the U.S. manufacturer part number, for approximately $2,210.00.

(5)     On or about February 9, 2006, defendant MANSOUR MOGHTADERI ZADEH and other conspirators caused the fiber optic video transmitter and receiver to be shipped from the New York Company to Entity A in the Netherlands, where it was re-packaged and shipped to EEC in Tehran, Iran.

(6)     On or about March 1, 2006, Entity A, located in the Netherlands, paid a 10% commission, or approximately $221.00, to defendant BARSAN, located in Iran, in connection with the transaction.

## EXPORT OF AVIATION COURSE INDICATORS

(7)     In or about July 2006, the Islamic Republic of Iran Air Force in Tehran, Iran, requested defendant MANSOUR MOGHTADERI ZADEH, through defendant BARSAN, to purchase aviation course indicators, identified by the U.S. manufacturer part number.

(8)     On or about July 11, 2006, Entity A, located in the Netherlands, placed an order for three overhauled aviation course indicators, identified by the U.S. manufacturer part number, with a company located in Kansas ("Kansas Company") for $5,967.00.

(9)     On or about July 11, 2006, Entity A, located in the Netherlands, sent a sales

10

order to defendant BARSAN, located in Tehran, Iran, for three overhauled aviation course indicators, identified by the U.S. manufacturer part number, for approximately $7,757.10.

(10)    On or about July 24, 2006, defendant MANSOUR MOGHTADERI ZADEH and other conspirators caused the overhauled aviation course indicators, identified by the U.S. manufacturer part number, to be shipped from the United States to Entity A in the Netherlands.

(11)    On or about July 25, 2006, defendant MANSOUR MOGHTADERI ZADEH and other conspirators caused the three overhauled aviation course indicators, identified by the U.S. manufacturer part number, to be shipped from the Netherlands to defendant BARSAN in Tehran, Iran.

(12)    On or about September 28, 2006, Entity A, located in the Netherlands, paid a 10% commission, or approximately $775.70, to defendant BARSAN, located in Iran, in connection with the transaction.

## ATTEMPTED EXPORT OF AEROSPACE METAL SHEETS AND RODS

(13)    On or about March 14, 2007, Entity A, located in the Netherlands, sent a purchase order for aerospace metal sheets and rods, which are known to have applications in the aviation industry, from a company located in Florida ("Florida Company") on behalf of a customer in Iran.

(14)    On or about August 1, 2007, defendant MANSOUR MOGHTADERI ZADEH, through defendant LAVANTIA, located in Cyprus, sent a purchase order to the Florida Company to purchase the shipment of aerospace metal sheets and rods.

(15)    On or about August 29, 2007, Individual B, the owner of Entity A, located in the Netherlands, contacted the Florida Company to explain that the shipment of aerospace metal

11

sheets and rods would be purchased by defendant LAVANTIA, located in Cyprus, and Individual B would guarantee payment.

(16)    On or about September 6, 2007, defendant MANSOUR MOGHTADERI ZADEH and other conspirators attempted to cause the aerospace metal sheets and rods to be shipped from the United States to the Netherlands, but the shipment was detained by the United States Department of Commerce pending certification of the end user.

(17)    Between on or about September 12, 2007, and on or about September 17, 2007, on multiple occasions defendant MANSOUR MOGHTADERI ZADEH, using the alias MITA ZAREK, contacted an agent of the United States Department of Commerce in an attempt to have the shipment of aerospace metal sheets and rods released and delivered.

## FAILURE TO OBTAIN A LICENSE

(18)    Defendant MANSOUR MOGHTADERI ZADEH and other conspirators failed to apply for, receive, and possess, and caused others to fail to apply for, receive, and possess a license from the Office of Foreign Assets Control, United States Department of the Treasury, located in the District of Columbia, to export any of the goods set forth above from the United States to Iran.

(**Conspiracy to Unlawfully Export U.S.-Origin Goods to Iran and to Defraud the United States**, in violation of Title 18, United States Code, Section 371; Title 50, United States Code, Section 1705; and Title 31, Code of Federal Regulations, Sections 560.203 and 560.204.)

## COUNTS TWO through THIRTEEN
**(Unlawful Exports or Attempted Unlawful Exports of U.S.-Origin Goods to Iran)**

23.     The allegations in Paragraphs 1 through 15, 18, 19 and 22 of this Indictment are incorporated and re-alleged by reference herein.

24.     On or about the dates listed as to each count below, within the District of Columbia and elsewhere, defendant MANSOUR MOGHTADERI ZADEH and the company defendants listed as to each count below, did knowingly and willfully export, attempt to export, and cause to be exported materials set out in Counts Two through Thirteen from the United States to Iran, without having first obtained the required license from the Office of Foreign Assets Control, United States Department of the Treasury, located in the District of Columbia.

| Count | Approx. Date of Export | Company Defendants | Item Description | Destination |
|---|---|---|---|---|
| **2.** (Overt Acts (1)-(6)) | February 2006 | BARSAN | Video Transmitter and Receiver | Tehran, Iran |
| **3.** (Overt Acts (7)-(12)) | July 2006 | BARSAN | Aviation Course Indicators | Tehran, Iran |
| **4.** (Overt Acts (13)-(17)) | September 2007 (attempt) | LAVANTIA | Aerospace Metal Sheets and Rods | Tehran, Iran |
| **5.** | May 2007 (attempt) | LAVANTIA | Zenthane Camouflage Paint | Tehran, Iran |
| **6.** | August 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Resin and Chemicals | Tehran, Iran |

| Count | Approx. Date of Export | Company Defendants | Item Description | Destination |
|---|---|---|---|---|
| **7.** | September 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Sealant | Tehran, Iran |
| **8.** | September 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Paint | Tehran, Iran |
| **9.** | October 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Paint and Coating | Tehran, Iran |
| **10.** | October 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Pneumatic Grease | Tehran, Iran |
| **11.** | November 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Film Adhesive | Tehran, Iran |
| **12.** | November 2007 | LAVANTIA | Adhesives | Tehran, Iran |
| **13.** | February 2008 (attempt) | LAVANTIA | Adhesive Primer | Tehran, Iran |

(**Unlawful Exports or Attempted Exports of U.S.-Origin Goods to Iran**, in violation of Title 50, United States Code, Section 1705; Title 31, Code of Federal Regulations, Sections 560.203 and 560.204; **Aiding and Abetting and Causing an Act to be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNTS FOURTEEN through TWENTY-FOUR
### (Willful Violations of Temporary Denial Order)

25.     The allegations in Paragraphs 1 through 15, 18, 19 and 22 of this Indictment are incorporated and re-alleged by reference herein.

26.     On or about October 1, 2007, pursuant to 15 C.F.R. §§ 764.6(c) and 764.24, the

United States Department of Commerce, headquartered in the District of Columbia, issued a Temporary Denial Order ("TDO") against defendant LAVANTIA, located in Cyprus, and MITA ZAREK, an alias for defendant MANSOUR MOGHTADERI ZADEH.

27.     On or about October 1, 2007, a copy of the TDO was sent to MITA ZAREK, an alias for defendant MANSOUR MOGHTADERI ZADEH, at the address and facsimile number listed for defendant LAVANTIA, and was also published in the Federal Register.

28.     On or about October 8, 2007, defendant MANSOUR MOGHTADERI ZADEH, using the alias MITA ZAREK, acknowledged receipt of the TDO in an e-mail to an agent of the United States Department of Commerce.

29.     The TDO prohibited defendant LAVANTIA, located in Cyprus, and MITA ZAREK from participating, directly or indirectly, in any way in any transaction involving any commodity exported from the United States.  The TDO prohibited, among other things:

> Carrying on negotiations concerning, or ordering, buying, receiving, using, selling, delivering, storing, disposing of, forwarding, transporting, financing, or otherwise servicing in any way, any transaction involving any item exported or to be exported from the United States that is subject to the EAR, or in any other activity subject to the EAR.

30.     The TDO was extended on two occasions, and was in continuous effect from October 10, 2007 through April 10, 2009.

31.     On or about the dates listed as to each count below, within the District of Columbia and elsewhere, defendant MANSOUR MOGHTADERI ZADEH and the company defendants listed as to each count below, did knowingly and willfully violate the terms of the TDO by attempting to export and causing to be exported materials set out in Counts Fourteen through Twenty-Four from the United States.

| Count | Approx. Date of Export | Company Defendants | Item Description | Destination |
|---|---|---|---|---|
| 14. | August 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Resin and Chemicals | Tehran, Iran |
| 15. | September 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Sealant | Tehran, Iran |
| 16. | September 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Paint | Tehran, Iran |
| 17. | October 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Paint and Coating | Tehran, Iran |
| 18. | October 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Pneumatic Grease | Tehran, Iran |
| 19. | November 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Film Adhesive | Tehran, Iran |
| 20. | November 2007 | LAVANTIA | Adhesives | Tehran, Iran |
| 21. | February 2008 (attempt) | LAVANTIA | Adhesive Primer | Tehran, Iran |
| 22. | July 2008 | LAVANTIA, ARAXIS TRADE MANAGEMENT | Paint and Epoxy | United Kingdom |
| 23. | August 2008 | LAVANTIA, ARAXIS TRADE MANAGEMENT | Resin | Cyprus/United Kingdom |
| 24. | December 2008 | LAVANTIA, ARAXIS TRADE MANAGEMENT | Polyurethane Coating and Thinner | United Kingdom |

16

(**Willful Violations of Temporary Denial Order**, in violation of Title 50, United States Code, Section 1705; Title 15, Code of Federal Regulations, Section 764.2; **Aiding and Abetting and Causing an Act to be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNTS TWENTY-FIVE through THIRTY-EIGHT
### (Smuggling)

32.     The allegations in Paragraphs 1 through 15, 18, 19 and 22 of this Indictment are incorporated and re-alleged by reference herein.

33.     On or about the dates listed as to each count below, within the District of Columbia and elsewhere, defendant MANSOUR MOGHTADERI ZADEH and the company defendants listed as to each count below, did knowingly and fraudulently export and send, and attempt to export and send from the United States, merchandise, articles, and objects, to wit, materials set forth in Counts Twenty-Five through Thirty-Eight, contrary to laws and regulations of United States, specifically 50 U.S.C. § 1705, 31 C.F.R.§§ 560.203 and 560.204, and 15 C.F.R. § 764.2:

| Count | Approx. Date of Export | Company Defendants | Item Description | Destination |
|---|---|---|---|---|
| **25.** (Overt Acts (7)-(12)) | July 2006 | BARSAN | Aviation Course Indicators | Tehran, Iran |
| **26.** (Overt Acts (13)-(17)) | September 2007 (attempt) | LAVANTIA | Aerospace Metal Sheets and Rods | Tehran, Iran |
| **27.** | May 2007 (attempt) | LAVANTIA | Zenthane Camouflage Paint | Tehran, Iran |

| Count | Approx. Date of Export | Company Defendants | Item Description | Destination |
|---|---|---|---|---|
| **28.** | August 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Resin and Chemicals | Tehran, Iran |
| **29.** | September 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Sealant | Tehran, Iran |
| **30.** | September 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Paint | Tehran, Iran |
| **31.** | October 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Paint and Coating | Tehran, Iran |
| **32.** | October 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Pneumatic Grease | Tehran, Iran |
| **33.** | November 2007 | LAVANTIA, JAYHOUN FARAZ KALA | Film Adhesive | Tehran, Iran |
| **34.** | November 2007 | LAVANTIA | Adhesives | Tehran, Iran |
| **35.** | February 2008 (attempt) | LAVANTIA | Adhesive Primer | Tehran, Iran |
| **36.** | July 2008 | ARAXIS TRADE MANAGEMENT, LAVANTIA | Paint and Epoxy | United Kingdom |
| **37.** | August 2008 | ARAXIS TRADE MANAGEMENT, LAVANTIA | Resin | Cyprus/United Kingdom |
| **38.** | December 2008 | ARAXIS TRADE MANAGEMENT, LAVANTIA | Polyurethane Coating and Thinner | United Kingdom |

(**Smuggling**, in violation of 18 U.S.C. § 554; **Aiding and Abetting and Causing an Act to be Done**, in violation of 18 U.S.C. § 2.)

## COUNT THIRTY-NINE
### (Material False Statements)

34.     The allegations in Paragraphs 1 through 15, 18, 19 and 22 of this Indictment are incorporated and re-alleged by reference herein.

35.     On or about May 21, 2007, within the District of Columbia and elsewhere, defendant MANSOUR MOGHTADERI ZADEH, in a matter within the jurisdiction of the United States Department of Homeland Security, Bureau of Customs and Border Protection; the United States Census Bureau; and the United States Department of Commerce, Bureau of Industry and Security, all of which are located in the District of Columbia, did knowingly and willfully falsify, conceal, and cover up and cause to be falsified, concealed, and covered up, by a trick, scheme, and device, material facts and made and caused to be made false, fictitious and fraudulent statements and representations as to a material fact, and made and used and caused to be made or used a false writing and document knowing the same to contain a false, fictitious and fraudulent entry, by creating false and fictitious shipping documents, including a Shipper's Export Declaration, which stated that the ultimate consignee of the shipment of Zenthane Camouflage Paint was defendant LAVANTIA, the ultimate destination of the shipment was Cyprus, and that no license was required, when defendant MANSOUR MOGHTADERI ZADEH there and then knew well that these statements were false.

(**Material False Statements**, in violation of 18 U.S.C. § 1001; **Aiding and Abetting and Causing an Act to be Done**, in violation of 18 U.S.C. § 2.)

## FORFEITURE ALLEGATION

36.     The violations alleged in Count One through Count Thirty-Eight of this Indictment

are re-alleged and incorporated by reference herein for the purpose of alleging forfeiture to the

United States of America pursuant to the provisions of Title 18, United States Code, Section

981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

37.     As a result of the offenses alleged in Count One through Count Thirty-Eight of this

Indictment, defendants shall forfeit to the United States any property constituting, or derived from,

proceeds obtained directly or indirectly, as the result of the offenses alleged in Count One through

Count Thirty-Eight, including, but not limited to:

Money Judgment

a sum of money of at least $79,126.09, which represents a sum of money equal to property
constituting, or derived from, proceeds obtained, directly or indirectly, as the result of the
offenses alleged in Count One through Count Thirty-Eight of this Indictment.

By virtue of the commission of the felony offenses charged in Count One through Count

Thirty-Eight of this Indictment, any and all interest that defendants have in property constituting, or

derived from, proceeds obtained directly or indirectly, as the result of such offenses is vested in the

United States and hereby foreited to the United States pursuant to Title 18, United States Code,

Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

If, as a result of any act or omission of the defendants, the property identified above:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot be subdivided without difficulty; it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the said defendants up to the value of said property listed above as being subject to forfeiture.

      (**Criminal Forfeiture**, in violation of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).)


A TRUE BILL


_____FOREPERSON


Attorney of the United States in
and for the District of Columbia